J-S55021-15

2015 PA Super 232

| | | |
|---|---|---|
| BRANDY L. ROMAN, | ⁞ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | ⁞ | |
| v. | ⁞ | |
| MCGUIRE MEMORIAL, | ⁞ | |
| Appellant | ⁞ | No. 239 WDA 2015 |

Appeal from the Judgment Entered  February 9, 2015
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 11624-2011

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER, J.[*]

OPINION BY BENDER, P.J.E.:                    **FILED NOVEMBER 09, 2015**

McGuire Memorial (McGuire), a health care facility, appeals from the judgment entered on February 9, 2015, in favor of Brandy L. Roman (Ms. Roman) in the amount of $121,869.93 and reinstating her to her former position as a direct care worker in this wrongful termination action filed by Ms. Roman against McGuire, wherein Ms. Roman sought back wages, lost benefits and future lost wages or reinstatement.  We affirm.

The trial court set forth the following summary of the facts in its memorandum and order issued after a bench trial was held:

McGuire Memorial Home is an intermediate care facility for the mentally retarded[, licensed by the Department of Public Welfare].  It provides "round- the -clock nursing care with an on

_____

[*] Retired Senior Judge assigned to the Superior Court.

-staff RN and LPN as well as physician availability 24 hours a day." (Plaintiff's Exhibit 16).

Ms. Roman was employed by McGuire Memorial as a direct care worker from August 3, 2009 until June 24, 2011, when she was terminated for refusing to work mandatory overtime. As a "direct care worker," Ms. Roman cared for the residents' day-to-day needs, including feeding, bathing, changing, and providing care related to breathing treatments, vents and tracheotomies. She attended training to administer medication to the residents.

During the time of Ms. Roman's employment, McGuire had a mandatory overtime policy ("mandation") in place, which required its direct care workers to work mandatory overtime. After four refusals of mandation, an employee would be terminated. McGuire claims that Ms. Roman refused mandatory overtime on March 14, March 19, June 19 and June 20, 2011. Ms. Roman disputes that she was actually mandated to work overtime on those dates. Nonetheless, Ms. Roman was fired after what McGuire considered to be her fourth refusal of mandation on June 20, 2011. Ms. Roman had informed McGuire on several occasions that she was not required to work overtime as a direct care healthcare worker pursuant to Act 102.[1]

At the time of her employment with McGuire, Ms. Roman was the mother of three young children. She resided with her boyfriend. Together, they worked opposite shifts, so they did not have to pay for daycare for their children. Her boyfriend worked a 6:00 a.m. to 2:00 p.m. shift, and Ms. Roman worked a 3:30 p.m. to 11:30 p.m. shift. When Ms. Roman was mandated to work overtime, McGuire required her to stay on from approximately 11:30 p.m. to 8:00 a.m. Ms. Roman informed McGuire that she was unable to work the mandatory overtime, as she had no one to care for her young children.

Following her termination, Ms. Roman actively sought employment and submitted over 100 job applications. Despite her efforts, she was unable to find a new job, until shortly before the non-jury trial in this matter.

---

[1] The Prohibition of Excessive Overtime in Health Care Act, 43 P.S. §§ 932.1 – 932.6, is known and cited as Act 102.

Trial Court Memorandum Opinion and Non-Jury Decision, 1/9/15, at 2-3.

On September 9, 2011, Ms. Roman filed a complaint in the trial court, alleging that McGuire fired her "in retaliation for her refusal to accept overtime work" and that the discharge "offends the public policy of the Commonwealth of Pennsylvania as embodied in Act 102 generally, and in 43 Pa. Stat. § 932.3(b) specifically." Ms. Roman's Complaint, ¶ 17, ¶ 18.[2] McGuire filed preliminary objections, contending that the trial court lacked subject matter jurisdiction and that it was not an entity covered by Act 102. The trial court denied McGuire's preliminary objections. **See** Order, 2/1/12. The court also denied McGuire's subsequently filed motion for summary judgment, in which it likewise alleged "it is not a health care facility subject to Act 102's prohibitions" and that the trial court "does not have jurisdiction over [Ms. Roman's] claims." Trial Court Memorandum Opinion and Order, 2/11/14, at 1. Thereafter, McGuire filed a motion to amend the February 11, 2014 order, requesting a stay and permission to appeal in that the order "involves [a] controlling question of law with regard to the jurisdiction of th[e] [c]ourt and whether or not [McGuire] is a covered entity under the provisions of [Act 102]." **See** McGuire's Motion to Amend Interlocutory

_____

[2] Prior to filing her complaint, Ms. Roman filed a grievance with her union and a complaint with the Pennsylvania Department of Labor and Industry (Department). Ms. Roman notes that McGuire responded to a Department inquiry, asserting it is not an entity covered by Act 102. It appears that neither of Ms. Roman's actions moved forward to completion. Thus, she filed the complaint that is at issue here.

Order, 3/13/14, ¶ 3. The trial court denied this request by order dated April 2, 2014. On September 15, 2014, a non-jury trial was held and resulted in the award of damages to Ms. Roman and her reinstatement.[3] Judgment was entered on February 9, 2015.

On February 6, 2015, McGuire filed an appeal with this Court and a timely Pa.R.A.P. 1925(b) statement in response to the trial court's order requesting same. In this appeal, McGuire raises the following two issues for our review:

> I. Whether the trial court erred as a matter of law by exercising subject matter jurisdiction and adjudicating a claim under the Prohibition of Excessive Overtime in Health Care Act, 43 Pa.C.S. §§ 932.1 – 932.6?
>
> II. Is it required that the issue of subject matter jurisdiction, a non-waivable principle of substantive law, be presented as a post[-]trial motion under Pa.R.C.P. 227.1 to prevent waiver on appeal?

McGuire's brief at 4.

Upon receipt of McGuire's appeal, this Court directed a rule to show cause order to McGuire, questioning why the appeal should not be quashed in that no post-trial motions were filed. Thereafter, Ms. Roman filed a petition to dismiss, requesting that this Court dismiss McGuire's appeal because McGuire had not filed a post-trial motion and, thus, had waived all issues. Despite McGuire's response to the rule to show cause, claiming that

_____

[3] Both parties filed post-trial memoranda on October 30, 2014, prior to the court's rendering of its verdict.

the only issue was whether the trial court had subject matter jurisdiction, this Court quashed the appeal *sua sponte* on March 20, 2015. This Court also dismissed Ms. Roman's petition to dismiss McGuire's appeal as moot. McGuire then filed an application for reconsideration of the quashal, which this Court granted by order dated April 8, 2015. The April 8, 2015 order further vacated the March 20, 2015 order quashing the appeal. It also discharged the rule to show cause and deferred Ms. Roman's petition to dismiss the appeal for disposition by the merits panel. Accordingly, we must first consider Ms. Roman's petition to dismiss.

We begin by setting forth Ms. Roman's assertion that McGuire's appeal should be dismissed in that post-trial motions must be filed to preserve any issues for appeal. Thus, Ms. Roman claims that because McGuire failed to file any post-trial motion, no issue has been preserved in this appeal. As support, Ms. Roman cites Pa.R.C.P. 227.1(c)(2), which states in pertinent part that "[p]ost-trial motions <u>shall</u> be filed within ten days after … the filing of the decision in the case of a trial without jury." Pa.R.C.P. 227.1(c)(2) (emphasis added). Ms. Roman also relies on ***Liparota v. State Workmen's Insurance Fund***, 722 A.2d 253 (Pa. Cmwlth. 1999), a case in which the Commonwealth Court affirmed a trial court's non-jury verdict in favor of the State Workmen's Insurance Fund (Fund). The Fund was the plaintiff in the matter and was seeking recovery of the overpayment of benefits that occurred because Liparota deliberately concealed his receipt of wages while he was collecting workers' compensation benefits. Following

- 5 -

the entry of the verdict, Liparota failed to file for post-trial relief.[4] Rather, he "filed a petition for review … in conformity with Pa.R.A.P. 1511, which governs appeals from governmental determinations, not courts of common pleas." *Liparota*, 722 A.2d at 255. Essentially, Liparota was contending that the court of common pleas lacked subject matter jurisdiction because the workers' compensation system has exclusive jurisdiction over a claim of overpayment. Thereafter, the Fund filed a motion to dismiss the appeal, asserting that Liparota failed to file post-trial motions as required by Pa.R.C.P. 227.1, and, therefore, he waived all issues on appeal. In response to the Fund's motion to dismiss, the Commonwealth Court stated:

> Where a party fails to file timely post-trial motions after a bench trial, no issues are preserved for this Court to review. *Siegfried v. Borough of Wilson*, 695 A.2d 892 (Pa. Cmwlth. 1997).
>
> In the present case, the Fund filed a complaint in equity against [c]laimant, and, after conducting a bench trial, Common Pleas found in favor of the Fund. Claimant admits that he declined to file post-trial motions. Considering the plain language of Pa.R.C.P. [] 227.1(c), post-trial motions were necessary to preserve issues for appeal. And, because this action originated in Common Pleas and was not an appeal from an order of a local or Commonwealth agency, it cannot be deemed a statutory appeal, regardless of the fact that the Fund filed suit to recover workers' compensation monies that [c]laimant wrongfully received. Hence, we must conclude that [c]laimant failed to preserve any issues for our review, and we will grant the Fund's motion to dismiss this matter.

---

[4] As in the case presently before us, the claimant in *Liparota* raised lack of subject matter jurisdiction in preliminary objections and in a motion for summary judgment before the trial court.

- 6 -

*Id.* at 256 (footnotes omitted). Based upon *Liparota*, Ms. Roman makes the point that even if a party can raise subject matter jurisdiction at any time, "the appeal still must be properly before the Court in the first instance." Ms. Roman's brief at 12. She then claims that neither Rule 277.1 nor any other rule or statute "provides an exception to the requirement of post-trial motions when subject matter jurisdiction is at issue." *Id.*

McGuire counters Ms. Roman's position by asserting that "[t]here is no logic or rational analysis to conclude that a procedural rule (Pa.R.C.P. 227.1) completely voids a non-waivable issue of substantive law (subject matter jurisdiction) that is, in reality, the sole basis for any court to entertain any case in our legal system." McGuire's brief at 14. McGuire then cites *Silver v. Pinsky*, 981 A.2d 284 (Pa. Super. 2009), and numerous other cases in which the non-waivable nature of subject matter jurisdiction is discussed. In *Silver*, this Court stated:

> Preliminarily, we observe: "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law. 42 Pa.C.S. § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas)." *Commonwealth v. Bethea*, 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003), *cert. denied*, 540 U.S. 1118, 124 S. Ct. 1065, 157 L. Ed. 2d 911 (2004). "The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice*. Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case." *Drafto Corp. v. National Fuel Gas Distribution Corp.*, 806 A.2d 9, 11 (Pa. Super. 2002) (quoting *Aronson v. Sprint Spectrum, L.P.*, 767

A.2d 564, 568 (Pa. Super. 2001), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001)).

> Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. Questions of law are subject to a *de novo* standard of review. **Any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a particular matter is an issue the parties cannot waive by agreement or stipulation, estoppel, or waiver. In other words, the parties or the court *sua sponte* can raise a challenge to subject matter jurisdiction at any time.**

> ***Robert Half Intern., Inc. v. Marlton Technologies, Inc.***, 902 A.2d 519, 524-25 (Pa. Super. 2006) (en banc).

***Silver***, 981 A.2d at 929 (emphasis added).

McGuire also quotes this Court's discussion in ***Rieser v. Glutkowsky***, 646 A.2d 1221 (Pa. Super. 1994), to support its argument that subject matter jurisdiction is non-waivable, can be raised at any stage of a proceeding, and can be raised for the first time on appeal. The ***Rieser*** court stated:

> Before a court may issue an order, it must have authority to act. Jurisdiction over the subject-matter is fundamental to a court's authority to act.

> > Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject-matter in a given case. … Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect.

> > It is well-settled that this court may raise the question of subject matter jurisdiction *sua sponte*. Appellate courts have

the authority to address the issue of the subject matter jurisdiction of the trial court even if the parties do not challenge the trial court's jurisdiction while the case is before the trial court.

The test of jurisdiction is whether the trial court is competent to hear and determine controversies of the general nature of the matter involved. Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case. When there is no jurisdiction, there is no authority to pronounce judgment. Where a court lacks jurisdiction in a case, any judgment regarding the case is void.

*Id.* at 1223-24 (citations omitted). Thus, based upon these statements of the law, McGuire claims that despite its failure to file post-trial motions, it cannot be held to have waived its claim that the trial court did not have subject matter jurisdiction over the suit Ms. Roman filed against it.

We agree and conclude that McGuire's failure to file a post-trial motion does not limit its right to raise a subject matter jurisdiction claim at any time during the ensuing proceedings.[5] Although we do not condone McGuire's actions in failing to file a post-trial motion, it remains evident that subject matter jurisdiction is non-waivable and can be raised at any time, by any party, and by a court *sua sponte*.[6] Accordingly, we deny Ms. Roman's petition to dismiss McGuire's appeal.

_____

[5] We recognize that our decision here runs counter to the Commonwealth Court's opinion in **Liparota**. However, we are not bound by decisions issued by the Commonwealth Court. **See Commonwealth v. Giordano**, 2015 Pa. Super. LEXIS 448 (Pa. Super. 2015).

[6] We are also aware that McGuire raised its subject matter jurisdiction claim by preliminary objection, in its motion for summary judgment, in its motion

*(Footnote Continued Next Page)*

We now turn to the subject matter jurisdiction issue concerning whether the trial court had jurisdiction to entertain Ms. Roman's suit against McGuire under the auspices of Act 102. We begin our discussion by noting the trial court's recognition that Act 102 provides that "a health care facility may not require an employee to work in excess of an agreed to predetermined and regularly scheduled daily work shift." Memorandum Opinion and Order, 2/11/14, at 6 (unpaginated) (quoting 43 P.S. § 932.3(a)(1)).[7] Moreover, the court also indicated that Act 102 provided penalties against health care facilities that violate the Act. *Id.* (citing 43 P.S. § 932.6). The court further explained its understanding of what the Act provides and the case law on which it relied to conclude that it had jurisdiction to hear Ms. Roman's case.

> In addition, the Act provides that retaliation is prohibited: "The refusal of an employee to accept work in excess of the limitations set forth in [the Act] shall not be grounds for discrimination, dismissal, discharge or any other employment decision adverse to the employee.["] 43 P.S. § 932.3(b). The Act does not provide a remedy for an employee who is subject to retaliation. The Act does, however, direct the Department of Labor to promulgate regulations to implement the Act within 18

_____
*(Footnote Continued)*

to amend the February 11, 2014 order, and in its post-trial memorandum. Accordingly, the trial court was well aware of McGuire's position and had more than sufficient opportunity to correct this alleged error if it chose to do so. Raising subject matter jurisdiction for a fifth time in a post-trial motion would have been redundant.

[7] The trial court's February 11, 2014 Memorandum Opinion and Order was issued in conjunction with its denial of McGuire's motion for summary judgment.

months of the Act's effective date, which was July 1, 2009. Our research indicates that rules under this Act were proposed and published for comment in the Pennsylvania Bulletin on July 12, 2012. On January 4, 2014, the Pennsylvania Bulletin published notice of a public meeting on the proposed rules to be held by the Independent Regulatory Review Commission in Harrisburg, Pennsylvania on February 13, 2014.

Although the proposed rules provide a complaint and hearing process, to an aggrieved employee, they have not been formally adopted. Also, the rules do not provide that this complaint process is the exclusive remedy for an aggrieved worker.

Our review of the relevant case law indicates that an action in the Court of Common Pleas is appropriate for a wrongful termination claim that is based on a violation of public policy. The Pennsylvania Supreme Court held that an employee has a common law action for wrongful discharge where there is a clear violation of public policy in the Commonwealth. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283 (Pa. 2000). In McLaughlin, the court discussed the types of cases where an employee could file a claim for wrongful discharge. The court noted "that the exception to the employment at-will rule should be applied in only the narrowest of circumstances. However, we determined in [Shirk v. Shirey, 716 A.2d 1231 (Pa. 1998),] that an employer who fires an employee in retaliation for bringing a workers' compensation claim violates the public policy of this Commonwealth and can be liable at common law for wrongful discharge." Id. at 287.

The [McLaughlin C]ourt also observed that, "as a general proposition, the presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." Id.

The Court continued, "Our previous cases in this arena have not directly addressed the issue of what constitutes [']public policy,['] but we have stated in cases outside of the wrongful termination context that [']public policy is to be ascertained by reference to the laws and legal precedents and

- 11 -

not from supposed public interest[’] (citations omitted). Implicit in the previous determinations of this Court is that we declare the public policy of this Commonwealth by examining the precedent within Pennsylvania, looking to our own Constitution, court decisions and statutes promulgated by our legislature." Id. at 288.

In McLaughlin, the [C]ourt ultimately concluded that the [p]laintiff did not have a common law action for wrongful discharge, when she claimed she was fired in retaliation for complaining to her employer about a violation of OSHA's federal administrative regulations. Id. The court concluded that the [p]laintiff did not point to any Pennsylvania statutory scheme that her discharge would undermine. Also, she could not articulate how the public policy of the Commonwealth was implicated in order to support her claim. Id.

By contrast, in the instant action, Plaintiff, Brandy Roman, claims she was retaliated against for refusing to work overtime at McGuire Memorial. The Pennsylvania Statute on the Prohibition of Excessive Overtime in Health Care directly provides that an employee at a health care facility cannot be ordered to work in excess of an agreed to, predetermined, regularly scheduled daily work shift. 43 P.S. § 932.3(a). The Act also clearly provides that retaliation against an employee is not permitted. [43 P.S.] § 932.3(b). This is the public policy of the Commonwealth as set forth by the Legislature. Plaintiff claims the Act was violated, when McGuire Memorial asked her to work an overtime shift, she refused, and then was terminated from her employment. Under these facts, we believe that Plaintiff can bring a wrongful termination case in the Court of Common Pleas; she has alleged that her employer has violated the public policy of the Commonwealth when it discharged her from her employment in direct contravention of Pennsylvania law.

In sum, there are no rules adopted by the Department of Labor providing Plaintiff with another forum to bring her action. The proposed rules from the Department of Labor do not provide that the remedy is exclusive or that the Department has exclusive jurisdiction over such claims. Additionally, there is precedent to support a claim for wrongful termination for the violation of a Pennsylvania statute in the Court of Common

Pleas.  Accordingly, we believe that this Court is the appropriate forum for Plaintiff to file her wrongful termination suit.

Memorandum Opinion and Order, 2/11/14, at 6-9 (unpaginated).

To support its argument and counter the trial court's decision, McGuire begins by quoting *Jacques v. Akzo Int'l. Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. 1993), for the proposition that "courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available."  McGuire's brief at 9.  It then notes that no appellate cases have been decided that establish subject matter jurisdiction for claims under Act 102.  Rather, McGuire asserts "that administration and implementation of Act 102 was vested in the Pennsylvania Department of Labor and Industry."  *Id.*  McGuire further identifies the regulations implemented by the Department that cover complaint and investigation procedures, remedies and penalties, and the right to appeal an adverse decision by the Department to the Commonwealth Court.  Thus, McGuire asserts that there is no basis for a common pleas court to have jurisdiction while there is a statutory/administrative remedy.

McGuire also relies on *Weaver v. Harpster*, 975 A.2d 555 (Pa. 2009), and *Clay v. Advance Computer Applications*, 559 A.2d 917 (Pa. 1989), two cases in which McGuire claims the public policy argument has been rejected by the Supreme Court.  However, we conclude that these cases are inapposite.  In *Weaver*, the Court noted that "the legislature has made the [Pennsylvania Human Relations Act (PHRA)] the exclusive state law remedy for unlawful discrimination, preempting the advancement of common law

- 13 -

claims for wrongful discharge based on claims of discrimination." ***Weaver***, 975 A.2d at 567 n.10. Likewise, in ***Clay***, another PHRA case, the court discussed the legislature's limiting aggrieved parties from seeking remedies in the courts. ***See Clay***, 599 A.2d at 919. Here, the legislature has not explicitly provided that the avenue for a remedy under Act 102 is the Department.

With regard to the cases cited by the trial court, namely ***Shick*** and ***McLaughlin***, McGuire contends that the court's reliance was misplaced. As for the ***Shick*** case, McGuire recognizes that our Supreme Court created a public policy "to protect employees against retaliatory discharge for filing a claim under the [workers' compensation act]" because there was no statutory remedy. McGuire's brief at 11. However, McGuire argues that here Act 102 has a statutory/administrative remedy and also prohibits retaliation, citing section 932.3(b). Concerning ***McLaughlin***, McGuire asserts that the Supreme Court "upheld the at-will doctrine and declined to permit a common law claim based on public policy." ***Id.*** at 12. Thus, McGuire contends that the decision in ***McLaughlin*** supports a lack of jurisdiction by the trial court in an Act 102 claim. We disagree. ***McLaughlin*** stands for the proposition that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." ***McLaughlin***, 750 A.2d at 290. It does not foreclose a common law civil action if the plaintiff

can formulate and identify a clear public policy, which in the instant case is expressed in Act 102.

Also, as noted above, Act 102 establishes the public policy that "[a] health care facility may not require an employee to work in excess of an agreed to, predetermined and regularly scheduled daily work shift." 43 P.S. § 932.3(a)(1). However, Act 102 does not provide any administrative or statutory remedies to employees who are fired in retaliation for refusing to work forced overtime. Rather, it provides for fines to be levied against the facility and allows for orders directing facilities to take certain actions to correct violations. Act 102 contains nothing that allows for an employee in Ms. Roman's position to seek any remedy or even what administrative procedure she should follow to recover from McGuire for its actions.

Moreover, the trial court discussed the timeframe in which regulations were put in place following the legislature's enactment of Act 102. Act 102 became effective on July 1, 2009, but the regulations were not implemented until July 19, 2014. Thus, Ms. Roman's complaint, which was filed in September of 2011, occurred before any regulations existed. Accordingly, we conclude that the action Ms. Roman took by filing her complaint with the trial court was proper in that she had no other way to vindicate her rights. The court had subject matter jurisdiction to entertain her complaint and grant her relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/9/2015