J-A03019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.D.H. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.T. | : | |
| | : | |
| Appellant | : | No. 1355 MDA 2019 |

Appeal from the Order Entered August 1, 2019
In the Court of Common Pleas of York County
Civil Division at No:  2016-FC-002201-03

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:          **FILED: FEBRUARY 28, 2020**

T.T. ("Mother") appeals from the order entered on August 1, 2019, in the Court of Common Pleas of York County ("trial court"), relinquishing jurisdiction of the child custody matter involving her then fourteen-year-old son, D.H.,[1] to the Superior Court of Gwinnett County, in the State of Georgia. Upon careful review, we affirm.

The certified record reveals that J.D.H. ("Father") commenced the underlying custody action in December of 2016.  The trial court issued a final custody order on November 30, 2017, granting the parties shared legal custody, Father primary physical custody, and Mother partial physical custody

_____

[1] D.H. was born in January of 2005.

on alternating weekends during the school year and on seven consecutive days during June, July, and August, *inter alia*.

By order entered on May 25, 2018 ("existing custody order"), the trial court granted Father's request to relocate with D.H. to Atlanta, Georgia. The trial court granted the parties shared legal custody, Father primary physical custody, and Mother partial physical custody in York County, Pennsylvania one weekend per month during the school year for no more than seventy-two hours, and "one week of vacation and five periods not to exceed 96 hours each" during the summer. Existing Custody Order, 5/25/18, at 2-3. The existing custody order directed Mother to provide Father with written notice at least fifteen days before her requested custody time in this Commonwealth. In addition, the trial court granted Mother partial physical custody one weekend per month in Georgia for no more than forty-eight hours.[2] *Id.* at 3-4.

On February 7, 2019, Father filed in the Superior Court of Gwinnett County a petition for domestication of foreign orders and modification and petition for contempt. In his petition, Father requested that the existing custody order be registered, filed, and domesticated as a judgment of

_____

[2] The trial court did not limit Mother's partial custody in Georgia to the school year or to the summer. In addition, the trial court did not limit Mother's partial physical custody in Georgia to whether she exercised custody in Pennsylvania. Therefore, we presume that the trial court granted Mother partial physical custody in Georgia one weekend per month twelve months out of the year whether or not she exercised custody during those months in Pennsylvania.

Gwinnett County Superior Court. In addition, Father requested that the court find Mother in contempt of the existing custody order and modify the order by granting Mother partial physical custody in Georgia only and not in Pennsylvania.

By order dated March 22, 2019, following an expedited hearing, the Gwinnett County Superior Court registered and domesticated the existing custody order. The court was silent on Father's request to find Mother in contempt of the order. However, the court granted Father's request to modify the existing custody order by directing that Mother shall have partial physical custody one weekend per month in Atlanta for no more than seventy-two hours and one additional period per month in Atlanta for no more than forty-eight hours. In doing so, the court found that Mother was personally served with Father's petition, but she failed to file a responsive pleading. In addition, the court found that Mother was served with notice of the expedited hearing, but she failed to appear for the hearing.

On April 10, 2019, Mother filed in the trial court a petition for modification of the existing custody order and for contempt. Mother asserted that she was served with a copy of Father's foregoing petition, but she did not obtain legal representation. Mother also asserted that she was aware of the March 22, 2019 order in the Gwinnett County Superior Court. Nevertheless, Mother requested that the trial court find Father in contempt of the existing custody order. Specifically, Mother asserted that, on January 24, 2019, she

emailed Father with the schedule for her custody periods in Pennsylvania and Georgia for February through May of 2019. Mother asserted that Father responded by filing the above-described petition on February 7, 2019, in the Gwinnett County Superior Court. Further, Mother requested that the trial court modify the existing custody order by granting her primary physical custody.

On April 30, 2019, Father filed preliminary objections. He asserted that the Gwinnett County Superior Court assumed jurisdiction over this custody dispute by its March 22, 2019 order; therefore, the trial court lacked jurisdiction.

Due to Father's preliminary objections, the trial court found at a pre-trial conference on June 6, 2019, that scheduling a custody trial was premature. The trial court then scheduled a hearing on jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401-5482. By order dated June 6, 2019, the trial court directed, in relevant part:

> Under Section 5427 of the UCCJEA, we will conduct a hearing on jurisdiction [on] July 29, 2019. . . .
>
> We call to counsel and parties' attention that under Section B of Section 5427 there are eight factors, and counsel should be prepared to provide testimony relative to those eight factors.
>
> . . .
>
> We further note that we will attempt to talk with the judge in Georgia where an action has already been filed. In the event that the judge in Georgia wishes to hold a joint hearing, we may have

to change the date and time of this hearing, and we will notify both counsel, of course, as to any change in the hearing date.[3]

. . .

Order, 6/6/19.

The hearing on Father's preliminary objections occurred on July 29, 2019. At the beginning of the hearing, the trial court advised counsel, "we did talk to the [Honorable Warren Davis, Gwinnett County Superior Court, who] indicated that under the facts as we related to him . . . that he was happy to go with whatever we go with." N.T., 7/29/19, at 3. The trial court subsequently clarified that Judge Davis "did not think that a joint hearing was necessary." *Id.* at 31.

---

[3] Section 5410 of the UCCJEA provides in relevant part:

**§ 5410. Communication between courts.**

**(a) General rule.** — This Commonwealth may communicate with a court in another state concerning a proceeding arising under this chapter.

**(b) Participation of parties.** — The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

. . .

23 Pa.C.S. § 5410(a), (b).

Mother was the only witness to testify during the hearing, and she revealed as follows. Father and D.H. relocated to Georgia at the end of May of 2018. N.T., 7/29/19, at 7. D.H. attended the entire 2018-2019 school year in Georgia, where he completed eighth grade. *Id.* at 8, 26.

Mother exercised custody six times in Georgia and one time in Pennsylvania, which occurred during Christmas of 2018. *Id.* at 9. Mother last saw D.H. in the beginning of February of 2019. *Id.* at 9.

With respect to why she filed the petition for modification of the existing custody order and for contempt, Mother stated, "I was having extreme difficulty being able to have any type of visitation with my son. I was having trouble being able to talk to him on the phone. His phone would be turned off or taken away, and I was never told about it. . . ." *Id.*

Mother testified that she drove to Georgia to exercise custody, which resulted in wear and tear on the car and extra car service expenses. *Id.* at 14-17. Mother testified on direct examination:

Q. And so what does your car having problems, all these problems driving down to Georgia, how does that affect your ability to litigate this custody case in Georgia?

A. Well, I can't go down there. My fiancé told me that's the only car that we have, and he doesn't want me driving it down there anymore. So I can't go down and see my son.

*Id.* at 21.

At the conclusion of Mother's testimony, the trial court found on the record in open court, "[W]e have lost home state status because [D.H.] has

been in Georgia in excess of a year, which has been far more than the requisite six months, and Georgia has not declined to take jurisdiction." *Id.* at 31-32. The trial court ruled, "jurisdiction in this matter is relinquished from York County, Pennsylvania and specifically turned over to Gwinnett County, Georgia." *Id.* at 32. The trial court issued a written order to this effect on July 29, 2019, which it entered on August 1, 2019.

Mother filed a notice of appeal on August 15, 2019. By order entered on August 20, 2019, the trial court directed Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) "as promptly as possible." Order, 8/15/19. On September 3, 2019, Mother filed the concise statement. We deem Mother to have timely complied with the trial court's order.[4] The trial court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) on September 6, 2019.

_____

[4] Mother's notice of appeal was defective because she failed to file her concise statement of errors complained of on appeal contemporaneously as required by Pa.R.A.P. 1925(a)(2)(i). *See In re K.T.E.L.,* 983 A.2d 745, 747 (Pa. Super. 2009) (emphasis in original) (holding that the failure to file a concise statement of errors complained of on appeal **with** the notice of appeal will result in a defective notice of appeal, to be disposed of on a case by case basis). However, Mother timely complied with the trial court's order to file the concise statement. In addition, Father has not claimed that he was prejudiced as a result of Mother's procedural misstep, and we are unaware of any prejudice. Therefore, we conclude that Mother's error was harmless. *Cf. J.P. v. S.P.*, 991 A.2d 904 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

On appeal, Mother raises the following issues for our review, which we re-order for ease of disposition:

> 1. Whether the trial court abused its discretion and committed an error of law when it relinquished jurisdiction over the custody matter to Gwinnett County, Georgia?
>
> 2. Whether [Mother's] right to the opportunity to be heard was violated[?]

Mother's brief at 6.

Because Mother appeals from an order to transfer custody jurisdiction and not from an order to exercise or decline jurisdiction, our standard of review is *de novo*, and our scope of review is plenary.[5] ***See S.K.C. v. J.L.C.***, 94 A.3d at 408 (Pa. Super. 2014) (citing ***B.J.D. v. D.L.C.***, 19 A.3d 1082 n. 1 (Pa. Super. 2011)).

In her first issue, Mother argues that the trial court erred as a matter of law by applying Section 5421(a)(1) of the UCCJEA in relinquishing jurisdiction.[6] Mother asserts that Section 5421(a)(1) was only applicable

---

[5] We review for an abuse of discretion an order to exercise or decline subject matter jurisdiction that has been established. ***See S.K.C. v. J.L.C.***, 94 A.3d 402, 408 (Pa. Super. 2014).

[6] Section 5421(a)(1) of the UCCJEA provides in relevant part:

**§ 5421. Initial child custody jurisdiction.**

**(a)** *General rule.* — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

when the custody case commenced in 2016. Mother argues that Section

5422(a) of the UCCJEA was the applicable provision in determining whether it

had exclusive, continuing jurisdiction over the child custody dispute.[7] Because

_____

**(1)** this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

. . .

23 Pa.C.S. § 5421(a)(1).

[7] Section 5422 provides, in relevant part:

**§ 5422. Exclusive, continuing jurisdiction.**

**(a)** *General rule.* — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

**(1)** a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

**(2)** a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

the trial court did not make a determination under Section 5422(a)(1) or (2), Mother baldly asserts that this Court must vacate the subject order. Although we agree with Mother that the trial court erred in failing to apply Section 5422(a), we do not disturb the order.

Section 5422(a) provides, in relevant part, that a court will exercise exclusive, continuing jurisdiction of a custody order originally entered in Pennsylvania pursuant to Section 5421. **See** 23 Pa.C.S. § 5422(a); **see also Billhime v. Billlhime**, 952 A.2d 1174, 1176 (Pa. Super. 2008). Because the trial court had initial child custody jurisdiction under Section 5421(a)(1) in 2016, the trial court was required to analyze the facts and determine if it was divested of exclusive, continuing jurisdiction under either subsection 5422(a)(1) or (2).[8] By failing to do so, the trial court committed an error of law. **See S.K.C.**, 94 A.3d at 410.

Nevertheless, we do not vacate the order. Rather, we proceed, as in **S.K.C.**, to determine whether the trial court retained jurisdiction of this custody dispute pursuant to Section 5422(a). We explained in **S.K.C.**, "With this extensive factual record [developed in the trial court], a *de novo* standard of review, and a plenary scope of review, we are unhampered by the lack of

23 Pa.C.S. § 5422(a).

[8] Section 5422(a)(2) is inapplicable in this case since Mother resides in this Commonwealth.

the trial court determination on the legal question of exclusive, continuing jurisdiction."[9] **S.K.C.**, 94 A.3d at 410 n. 11; **see also Roman v. McGuire Mem'l**, 127 A.3d 26, 30 (Pa. Super. 2015) (citations omitted) (stating, "this Court may raise the question of subject matter jurisdiction sua sponte.")

In **S.K.C.**, this Court explained, pursuant to Section 5422(a)(1), "Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists **or** substantial evidence is present." **S.K.C.**, 94 A.3d at 411 (emphasis added) (citing **Rennie v. Rosenthol**, 995 A.2d 1217, 1220-1221 (Pa. Super. 2010)). We held that "a significant connection" exists "where one parent resides and exercises his parenting time in the state and maintains a meaningful relationship with the child." **S.K.C.**, 94 A.3d at 412 (quotation omitted).

In **S.K.C.**, this Court stated that the record evidence revealed that the mother last exercised custody in Pennsylvania in May of 2012, which was approximately seven months before the order on appeal in that case. This Court concluded that the mother did not have custody of the child in Pennsylvania between June and October of 2012, but it was not because of a lack of effort on her part. In fact, the trial court in that case held the father in contempt of court for failing to appear for a custody exchange in July of

---

[9] In addition, in its Rule 1925(a) opinion, the trial court considered Section 5422(a)(1) and (2) and concluded that it did not possess exclusive, continuing jurisdiction. **See** Trial Court Opinion, 9/9/19, at 6.

2012. We stated, "if we were to conclude that [the m]other was not exercising parenting time with [the c]hild between June and October of 2012, then we would be rewarding [the f]ather's contempt. We refuse to incentivize contemptuous behavior on the part of a litigant." *S.K.C.*, 94 A.3d at 412-413. As such, we held that the child had a "significant connection" with this Commonwealth.

In the case *sub judice*, the trial court never found Father in contempt of the existing custody order. Since entry of the existing custody order on May 25, 2018, Mother exercised custody in Pennsylvania one time, during Christmas of 2018. However, Mother never sought a contempt finding regarding her lack of monthly weekend custody in this Commonwealth prior to April 10, 2019, and her petition filed on that date was in response to the custody litigation in the Gwinnett County Superior Court. Moreover, Mother's petition sought a contempt finding against Father for his failure to accommodate her written request for custody periods from February of 2019, through May of 2019, in both Pennsylvania and Georgia. Based on this evidence, we conclude that Mother has not exercised her parenting time in this Commonwealth pursuant to the existing custody order. Therefore, we conclude that no "significant connection" with Pennsylvania exists in this case.

Similarly, we conclude that "substantial evidence" was not present in Pennsylvania concerning D.H.'s "care, protection, training and personal relationships." As stated above, since the existing custody order has been in

effect, D.H. has visited this Commonwealth once. D.H. resided in Georgia for nearly fifteen months by the time of the subject order, during which he attended and completed eighth grade. Accordingly, we conclude that "substantial evidence" was no longer present in Pennsylvania; thus, the trial court did not possess exclusive, continuing jurisdiction over this child custody dispute pursuant to Section 5422(a)(1).

In her second issue, Mother argues that the trial court denied the fundamental due process rights afforded to her by the United States Constitution. Specifically, Mother asserts the trial court's June 6, 2019 order scheduled a jurisdictional hearing under Section 5427 of the UCCJEA,[10] but

---

[10] Section 5427 provides, in relevant part:

**§ 5427. Inconvenient forum.**

**(a)** *General rule.* — A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.

**(b)** *Factors.* — Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

- 13 -

the trial court did not allow her to present all of her evidence concerning Section 5427 insofar as she presented her direct testimony, but her cross-examination was not completed. In addition, as discussed above, Mother asserts that, rather than Section 5427 of the UCCJEA, the trial court applied Section 5421; however, she contends the trial court also denied her due process because it did not provide her with an opportunity to present

---

**(1)** whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

**(2)** the length of time the child has resided outside this Commonwealth;

**(3)** the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;

**(4)** the relative financial circumstances of the parties;

**(5)** any agreement of the parties as to which state should assume jurisdiction;

**(6)** the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

**(7)** the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

**(8)** the familiarity of the court of each state with the facts and issues in the pending litigation.

. . .

23 Pa.C.S. § 5427(a), (b).

arguments or evidence regarding that provision. Mother's final issue is meritless.

It is well-settled that, "Procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (internal quotation marks and citations omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa. Super. 1996) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

It is well-settled that "the parties or the court *sua sponte* can raise a challenge to subject matter jurisdiction at any time." *Roman*, 127 A.3d at 30 (citations omitted). Moreover, subject matter jurisdiction may be raised for the first time on appeal. As stated above, "this Court may raise the issue of subject matter jurisdiction *sua sponte*." *Id.* (citation omitted).

In this case, we have concluded that the trial court erred by applying Section 5421(a) rather than Section 5422(a) in determining the jurisdictional question. We have further determined that the trial court did not possess exclusive, continuing jurisdiction under Section 5422(a)(1) or (2). Therefore, the trial court did not have subject matter jurisdiction. It follows that Section 5427 of the UCCJEA was inapplicable. As such, Mother's claim that the trial court erred in denying her the opportunity to be heard with respect to Section

5427(b) or Section 5421(a) is meritless. Accordingly, we affirm the trial court order transferring jurisdiction of this custody case to the Superior Court of Gwinnett County.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/28/2020